UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ARCH INSURANCE COMPANY, | Case No. 2:21-cv-00723-RFB-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| KNIGHT SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

## I.    INTRODUCTION

Before the Court are two motions: Defendant Knight Specialty Insurance Company/United Specialty Insurance Company's MOTION for Summary Judgment, ECF No. 16 and Plaintiff Arch Insurance Company's MOTION for Summary Judgment, ECF No. 17.

For the foregoing reasons, the motions are granted in part and denied in part.

## II.    PROCEDURAL BACKGROUND

Plaintiff Arch Insurance Company ("Arch Insurance") filed the Complaint on May 3, 2021. ECF No. 1. The Complaint seeks declaratory relief against Defendant Knight Specialty Insurance Company/United Specialty Insurance Company ("USIC"). Id. First, it seeks a declaratory judgment that Defendant's insured, LV Paving Company ("LV Paving"), is an additional insured under its insurance policy ("USIC-Superior Traffic Policy") with Superior Traffic Services Corporation ("Superior Traffic"), and that as such, Defendant has both a duty to defend and to indemnify LV Paving in an underlying state court action. Id. Second, Plaintiff seeks a declaratory judgment that the coverage afforded to LV Paving for the underlying state court action is primary

coverage, while the coverage afforded by Plaintiff's insurance policy with LV Paving is excess coverage. Id.

Defendant USIC filed an answer to the Complaint on May 24, 2021. ECF No. 6. Discovery closed on November 1, 2021. See ECF No. 10. Defendant then filed a Motion for Summary Judgment on December 1, 2021. ECF No. 16. On December 20, 2021, Plaintiff Arch Insurance responded. ECF No. 18. Defendant replied on January 3, 2022. ECF No. 20.

On December 1, 2021, Plaintiff filed its own Motion for Summary Judgment. ECF No. 17. Defendant responded on December 22, 2021. ECF No. 19. Plaintiff replied on January 5, 2022. ECF No. 21.

Oral argument was held on these motions on July 13, 2022. ECF No. 24. This Order follows.


### III.    FACTUAL BACKGROUND

The Court finds the following facts to be undisputed and disputed, respectively.

#### A.  Undisputed Facts

##### i.    The State Court Action

In 2016, third party Leroy Benevidez was injured in a motorcycle accident while traveling northbound on a portion of Rainbow Boulevard that was under construction. Benevidez filed suit in state court ("state court action") against third parties, inter alia, Superior Traffic, LV Paving, and Clark County.  Benevidez's state court complaint alleged two causes of action against Superior Traffic, LV Paving, and Clark County for: (1) "Negligence, Negligence Per Se, Respondeat Superior" and (2) "Negligence Hiring, Training, Supervision, and Retention." ECF No. 1-1 at 14, 16. As to the first cause of action, the Complaint alleges that LV Paving and its subcontractors, including Superior Traffic, failed to use due care in designing, managing, maintaining, and otherwise supervising the construction site, causing injury to him. As to the second cause of action, the Complaint alleges that LV Paving's failure to exercise due care hiring, training, supervising, controlling retaining persons, and directing the course and scope of Superior Traffic's actions and employment at the construction site led to Benevidez's injuries.

*ii.    The Subcontract Agreement*

Prior to the accident, Superior Traffic and LV Paving had entered into a subcontract agreement ("Subcontract Agreement"). The scope of work covered by the Subcontract Agreement included "the supply of all labor, materials, tools, equipment, supervision, management, and taxes necessary to complete the <u>traffic control</u> for the referenced Project in accordance with the Contract Documents . . . ." ECF No. 17-1 at 22 (emphasis in original). Thus, under the Subcontract Agreement's terms, Superior Traffic would provide traffic control services at the construction site. The Subcontract Agreement also provided that

> **11. Indemnity and Insurance**
> 11.1 INSURANCE REQUIREMENTS – Unless the Contract Documents require otherwise, Subcontractor agrees to procure and maintain . . . the following insurance coverage,
> . . .
> 3. **Comprehensive General Liability or Commercial General Liability** . . .
> . . .
> d) General Liability Policy forms shall include: . . . c) Full blanket contractual coverage; . . .; e) An endorsement naming Las Vegas Paving Corporation, it's officers, employees and agent and any other named interest as additional insured(s); f) An endorsement stating: "Such coverage as is afforded by this policy for the benefit of the additional insured(s) shall be primary and noncontributing with the coverage provided under this policy."
> . . .
> 11.2 INDEMNIFICATION
> a). **<u>General Indemnity</u>**: . . . Subcontractor, to the fullest extent permitted by law, with respect to all such work which is covered by or incidental to this agreement, shall defend all claims through legal counsel acceptable to Contractor, and indemnify and hold Contractor, it's insurance carriers and bonding companies, Owner and any other interested party designated by Contractor, or their agents, employees or representatives (collectively referred to as "Indemnities") harmless from and against any claim, liability, loss, damage, cost, expense, including attorney's fees, awards, fines or judgments arising by reason of the death or bodily injury to persons, injury or damage to tangible property, including the loss of use therefrom, whether or not it is caused in part by an Indemnitee; provided, however, that the Subcontractor shall not be obligated under this agreement to indemnify the Indemnities with respect to damages which are ultimately determined to be due the sole

~ 3 ~

negligence or willful misconduct of the Indemnities.

Id. at 14-16. Accordingly, the Subcontract Agreement required Superior Traffic to defend and indemnify LV Paving under certain circumstances, and that Superior Traffic procure insurance that provided coverage to LV Paving as an additional insured.

*iii.    The Arch-LV Paving Policy*

From October 1, 2016, to October 1, 2017, Plaintiff Arch Insurance insured LV Paving (CGL Policy No. ZAGLB9220200). Coverage A of the Arch-LV Paving Policy stated that Plaintiff Arch Insurance would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies," and that it would "have the right and duty to defend the insured against any 'suit' seeking those damages." ECF No. 17-3 at 35. What is more, "Section IV. Commercial General Liability Conditions" of the Arch-LV Paving Policy provided that

**4. Other Insurance**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
**a. Primary Insurance**
This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
**b. Excess Insurance**
(1) This insurance is excess over:
. . .
(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
. . .
**c. Method Of Sharing**
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains,

whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Id. at 46.

### iv.    USIC-Superior Traffic Policy

From March 9, 2016 to March 9, 2017, Defendant USIC insured Superior Traffic (CGL Policy No. KSVENS161155100). The USIC-Superior Traffic Policy's "ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION" endorsement modified the policy, providing the following under the "COMMERCIAL GENERAL LIABILITY COVERAGE PART,"

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) [When required by written contract], but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
**1.** Your acts or omissions; or
**2.** The acts or omissions of those acting on your behalf; In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and
**2.** If coverage provided to additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

ECF No. 17-2 at 33. Additionally, the USIC-Superior Policy contained a "Primary and Non-Contributory Insurance" endorsement, modifying the "Conditions" provided "COMMERCIAL GENERAL LIABILITY COVERAGE PART" by stipulating that "[a]ny coverage provided to an

Additional Insured shall be excess over any other valid and collectible insurance available to such Additional Insured whether primary, excess, contingent or on any other basis unless: 1) a written contract or written agreement specifically requires that this insurance apply on a primary basis and non-contributory basis . . . ." Id. at 59.

In addition, the USIC-Superior Traffic Policy contained the following exceptions to the exclusion for "Contractual Liability,"

> **2. Exclusions**
> This insurance does not apply to:
> . . .
> **b. Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> **(1)** That the insured would have in the absence of the contract or agreement; or
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Id. at 18.

Lastly, the USIC-Superior Traffic Policy contained an "Amendment of Insured Contract Definition" providing that "Paragraph 9 of the **Definitions** Section" was replaced by the following:

> **9.** "Insured contract" means:
>> . . .
>> **f.** That part of any other contract or agreement pertaining to

your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Id. at 46.

> v.    *Plaintiff and Defendant's Action Following the State Court Action*

Plaintiff Arch Insurance has subsequently defended LV Paving in the state court action. Plaintiff Arch Insurance has tendered the defense and indemnity of the state court action to Superior Traffic and Defendant USIC, pursuant to the Subcontract Agreement and LV Paving's "additional insured" status. In response, Defendant USIC rejected the tenders of defense and indemnity. On May 24, 2021, after the filing of the instant lawsuit, Defendant USIC agreed to contribute to LV Paving's defense in the state court action, under a reservation of its rights to further disclaim or limit coverage. To date, Defendant USIC has not issued any payment to Plaintiff Arch Insurance for costs of defense in the state court action.

> B.   *Disputed Facts*

The parties first dispute whether the USIC-Superior Traffic Policy was the "primary, noncontributory" insurance policy, such that Plaintiff Arch Insurance is entitled to complete defense and indemnification of its costs for defending LV Paving in the state court action. Second, the parties dispute that, if Plaintiff Arch Insurance is not entitled to complete defense and indemnification, to what extent Plaintiff should be compensated for the costs of defense and damages in a cost-sharing arrangement with Defendant USIC.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where there exists no genuine issue of fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing the absence of material fact. Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to show specific facts demonstrating a genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court makes all justifiable inferences in favor of the nonmoving party. Id. The nonmoving party, however, may not merely rest on the allegations of her pleadings. Rather, she must produce specific facts—by affidavit or other evidence— showing a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Ultimately, summary judgment is not appropriate if a reasonable factfinder could return a verdict for the nonmoving party. Id. at 248.

Declaratory judgment allows the Court to adjudicate a party's rights or obligations before it seeks a coercive remedy. Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996). The Declaratory Judgment Act, however, does not expand the Court's jurisdiction. Id.; see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950). Rather, a claim for declaratory relief is subject to the same federal jurisdictional requirements as any other case; it must be "brought by [an] interested party," and it must involve an actual controversy. See 28 U.S.C. § 2201; Moseley, 80 F.3d at 1405. Finally, a declaratory judgment action that seeks clarification of an insurer's coverage obligation or duty to defend is ripe for judicial review. See Govt. Emp.s Ins. Co. v. Dizol, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998).

## V.   DISCUSSION

### A.  LV Paving is an Additional Insured

The parties agree that Defendant LV Paving is an "Additional Insured" under both the Subcontract Agreement and the USIC-Superior Traffic Policy. Courts in the District of Nevada have concluded that an insurer's obligations to its additional insured are the same as those to its named insured. See, e.g., USF Ins. Co. v. Smith's Food & Drug Ctr., Inc., 921 F. Supp. 2d 1082, 1092 (D. Nev. 2013). The USIC-Superior Traffic Policy's "Additional Insured" endorsement explicitly provides that any organization required to be named as an additional insured by a written contract with Superior Traffic will be an additional insured under the policy. Superior Traffic

entered into a Subcontract Agreement with LV Paving where Superior Traffic agreed to provide additional insured coverage to LV Paving.

Therefore, the Court finds that LV Paving was an additional insured under the USIC-Superior Traffic Policy.

### B. Duty to Defend and Indemnify

Next, the Court addresses whether Defendant USIC owes Plaintiff Arch Insurance a duty to defend or indemnify, or both.

#### i. Duty to Defend

Plaintiff Arch Insurance argues that, because of LV Paving's status as an additional insured under the USIC-Superior Traffic Policy, Defendant USIC owes LV Paving a duty of defense in the state court action. Moreover, such duty to defend is primary and noncontributory coverage, making the Arch-LV Paving Policy excess coverage. Defendant USIC contends, however, that Plaintiff Arch Insurance cannot reasonably expect for Defendant USIC to shoulder the entire cost of defending LV Paving in the state court action, as LV Paving was not sued simply for its alleged vicarious liability of others – it was sued for its independent acts of negligence. Moreover, Defendant asserts that expecting such a defense goes against public policy.

The Court addresses this issue by turning to the language of the Arch-LV Paving Policy, the USIC-Superior Traffic Policy, the Subcontract Agreement, and the nature of Benevidez's state court claims. Ultimately, the Court agrees with Plaintiff Arch Insurance that the duty to defend was triggered under the terms of the policies, the Subcontract Agreement, and Benevidez's state court claims.

First, the Arch-LV Paving Policy states that it would provide insurance excess over other primary insurance that covered LV Paving for damages arising out of the premises or operations, where LV paving was added as an additional insured. Where there is no other primary insurance for which LV paving was an additional insured, the Arch-LV Paving Policy states that it will be the primary insurance. Second, the USIC-Superior Traffic Policy's "Additional Insured" endorsement states that the additional insured status would attach to contractors, here, LV Paving, "when required by written contract," "but only with respect to liability for 'bodily injury'" when

~ 9 ~

"caused in whole or in part, by" Superior Traffic's "acts or omissions." ECF No. 17-2 at 33. The policy also contains a "Primary and Non-Contributing Insurance" endorsement, which states that "[a]ny coverage to the additional insured [would] be excess over" any other insurance policy, unless "a written contract or agreement specifically" required that Defendant USIC-Superior Traffic's policy apply on a primary basis. Id. at 59.

Lastly, as to the Subcontract Agreement between Superior Traffic and LV Paving, both agreed that Superior Traffic would "procure and maintain" insurance coverage, including: (1) "[a]n endorsement naming Las Vegas Paving Corporation, it's officers, employees and agent and any other named interest as additional insured(s)" and (2) "[a]n endorsement stating: 'such coverage as is afforded by this policy for the benefit of the additional insured(s) shall be primary and noncontributing with the coverage provided under this policy.'" ECF No. 17-1 at 14-15. The Subcontract Agreement also provided that Superior Traffic would "defend all claims" and "indemnify and hold [LV Paving] . . . harmless from and against any claim, liability, loss, damage, cost, [and] expense . . . whether or not it is caused in part by an Indemnitee; provided, however, that [Superior Traffic] shall not be obligated under this agreement to indemnify the Indemnitees with respect to damages which are ultimately determined to be due the sole negligence or willful misconduct of the Indemnities." Id. at 15-16. Finally, the Subcontract Agreement identified Superior Traffic's scope of work as "supply of all labor, materials, tools, equipment, supervision, management, and taxes necessary to complete the traffic control for the referenced Project . . . ." Id. at 22.

The Court finds that, under the Arch-LV Paving Policy, the USIC-Superior Traffic Policy, and the Subcontract Agreement between LV Paving and Superior Traffic, Superior Traffic agreed to defend and indemnify LV Paving in any lawsuit, to the fullest extent, as the primary and noncontributing insurance policy, insofar as, that the underlying lawsuit alleged claims arising out of the negligence of Superior Traffic and its agents. Where damages are determined to be due to the sole negligence or willful misconduct of LV Paving, though, Defendant's USIC-Superior Traffic Policy would not serve as the "primary and non-contributory insurance" policy with respect to a defense.

1    On that basis, the Court must next determine whether Defendant USCIC had and has a duty

2    to defend LV Paving, based on the allegations in Benevidez's state court complaint.

3    An insurer's duty to defend activates when it discovers facts that give rise to liability under

4    the insurance policy. United Natl. Ins. Co. v. Frontier Ins. Co., Inc., 99 P.3d 1153, 1158 (Nev.

5    2004). The duty to defend is broader than its duty to indemnify. Id. Any doubt as to the insurer's

6    duty to defend should be resolved in favor of the insured. Aetna Cas. & Sur. Co. v. Centennial Ins.

7    Co., 838 F.2d 346, 350 (9th Cir. 1988). This is consistent with the public policy of preventing an

8    insurer from "evading its obligation" to provide a defense for its insured without evaluating the

9    facts of the underlying complaint. United Natl. Ins. Co., 99 P.3d at 1158. The duty to defend,

10   however, is not absolute. Aetna Cas. & Sur. Co., 838 F.2d at 350. The duty only exists when there

11   is "arguable or possible coverage" under the disputed policy. Morton v. Safeco Ins. Co., 905 F.2d

12   1208, 1212 (9th Cir. 1990).

13   Benevidez's state court complaint alleges that, on the night of the incident, Benevidez hit

14   a curb because it was the same color as the street and adjacent walkway (part of the construction).

15   It alleges that there was insufficient lighting in the area and no traffic control devices which would

16   have warned drivers of the curb or walkway. Thus, it appears to allege that, had there been

17   sufficient traffic control, Benevidez would not have hit the curb. It is clear from the language of

18   the Subcontract Agreement that traffic control is broadly within the scope of Superior Traffic's

19   duties. The state court complaint, however, also appears to allege that the street improvements

20   themselves were deficient, for example, because the color of the curb, street, and walkway, were

21   the same color, thus potentially falling within the scope of LV Paving's duties. As doubts regarding

22   the duty to defend are to be resolved in favor of the insured, here, Plaintiff Arch Insurance, and

23   the duty exists when there is "arguable or possible coverage," the Court construes Benevidez's

24   negligence claim to be asserting that his accident was caused by the negligence of Superior Traffic.

25   Morton, 905 F.2d at 1212. Liberally construed, the state court complaint alleges that, had there

26   been sufficient traffic control, such as appropriate lighting, markings, and signs, indicating that the

27   area was a construction zone, Benevidez might not have been injured.

28

~ 11 ~

As it relates to state court complaint's negligent hiring/training/retention claim, the complaint is ambiguous as to whether it asserts only direct negligence by LV Paving, or if it asserts negligence that is directly related to the misconduct of Superior Traffic's employees. The claim alleges that LV Paving owed Benevidez "a duty of care to hire, train, supervise, and retain Superior [Traffic] . . . to design, control, approve, develop, supervise, repair, maintain, and construct the Construction Project in a manner to afford reasonable protection to others on the public roadways from reasonably anticipated injuries that could occur," and that LV Paving "breached that duty." ECF No. 1-1 at 17. Because this claim necessarily turns on a finding that Superior Traffic's employees breached their own duty to Benevidez, it cannot be said that any damages arising from this claim would be "due to [the] sole negligence or willful misconduct" of LV Paving, pursuant to the parties' Subcontract Agreement. ECF No. 17-1 at 16.

Ultimately, it remains unclear whether Benevidez's state court complaint is asserting direct liability against LV Paving, based on independently negligent acts, or whether the claims of negligence against LV Paving are akin to vicarious liability claims for the negligent conduct of Superior Traffic. The Court finds that the claims alleged in Benevidez's state court complaint do not clearly arise from the alleged "sole negligence or willful misconduct" of LV Paving. Thus, because "doubt as to the insurer's duty to defend should be resolved in favor of the insured," the Court concludes that the duty to defend was triggered under the terms of the Subcontract Agreement and Defendant USIC's policy with Superior Traffic. Aetna Cas. & Sur. Co., 838 F.2d at 350.

Accordingly, the Court finds that Defendant USIC has a duty defend LV Paving in the underlying state court action.

### ii. Duty to Indemnify

Plaintiff Arch Insurance argues that Defendant USIC has a duty to indemnify, and that the indemnity obligation to LV Paving was primary and non-contributory over its own policy with LV Paving. Thus, Plaintiff asserts Defendant USCIC must indemnify it for the totality of the state court costs of defense – not just some part of it. Defendant contends that any claim for indemnity is premature. The Court agrees with Defendant USIC. There is no state court ruling on the merits

1   of Benevidez's claim yet. As such, Plaintiff Arch Insurance has not become "legally obligated to

2   pay damages in the underlying action," and therefore, there is not yet a duty to indemnify. United

3   Nat'l Ins. Co. v. Frontier Ins. Co., Inc., 99 P.3d 1153, 1157-58 (Nev. 2004).

4        Thus, the Court finds that, given the state of the underlying state court action, the question

5   of whether Defendant USIC has a duty to indemnify is not yet ripe for review.

6                                  *C.  Defense Costs*

7        The Court, having determined that Defendant USIC has a duty to defend, must now

8   determine how much Defendant must pay in defense costs for the underlying state court action.

9        Defendant USIC contends that, if it is required to pay defense costs for Plaintiff Arch

10  Insurance, the Court should apply the doctrine of equitable contribution and the proper allocation

11  of defense costs is pro rata based on the policy limits, using a two to one ratio, and the number of

12  parties defended. Defendant USIC's policy with Superior Traffic provides a $1 million policy

13  limit, while Plaintiff Arch Insurance's limit is $ 2 million; accordingly, Defendant asserts that the

14  allocation of any defense costs should be as follows: 50 percent of the total amount paid by Plaintiff

15  Arch Insurance, accounting for the differing liability limits, and then 50 percent of that allocated

16  amount to account for Plaintiff Arch Insurance's defense of Clark County.

17       Plaintiff Arch Insurance disagrees that equitable contribution applies to this dispute. It

18  contends that the parties do not cover the same risks because, under policies and the Subcontract

19  Agreement, Plaintiff Arch Insurance provides excess coverage, while Defendant USIC provides

20  primary coverage. And even if equitable contribution applied, Plaintiff contends that a pro rata

21  base allocation would still be improper because this is not a "time on risk" situation and that, in

22  any event, the USIC-Superior Traffic Policy provides that contribution should be done by "equal

23  shares" wherein Defendant USIC pays 50 percent of all defense fees and costs, regardless of any

24  policy limits. ECF No. 17-2 at 28.

25       The Court finds that it is premature to find that equitable contribution applies and rejects

26  Defendant's suggested approach to defense costs. The Court has found that LV Paving was an

27  additional insured on Defendant USIC's policy with Superior Traffic. The Court has also found

28  that Defendant USIC has a duty to defend LV Paving under Nevada law, based upon the contract

and polices in this case. Moreover, based on the plain language of the respective policies, the Court further finds that the USIC-Superior Traffic Policy is the primary policy for LV Paving, and that Plaintiff's Arch-LV Paving Policy is an excess policy in the context of this case. This means that Defendant USIC must immediately tender a defense in the underlying action for LV Paving. The Court further finds that Defendant USIC must tender the full amount of its policy before Plaintiff's excess policy would be triggered.

### VI.    CONCLUSION

**IT IS ORDERED** that Defendant Knight Specialty Insurance Company/United Specialty Insurance Company's Motion for Summary Judgment is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff Arch Insurance Company's Motion for Summary Judgment is GRANTED in part and DENIED in part.

The Court finds that Defendant USIC has a duty to defend Las Vegas Paving, and it must immediately tender a defense up to its policy limit in the underlying action. If costs exceed the policy limit of Defendant USIC's policy, then the excess policy of Plaintiff Arch Insurance would be triggered.

The Court declines to resolve the issue of the duty to indemnify, as the Court finds that it is premature to do so at this time because the underlying action has not been resolved. Upon the resolution of the underlying action, either party in this case has leave to file a motion to address the issue of indemnification and any contested defense costs.

/ / /

/ / /

/ / /

~ 14 ~

1        The Court further finds that Defendant may not at this juncture decline to tender a defense

2  simply because counsel for Las Vegas Paving is also representing Clark County in the underlying

3  state court action. The Court does not find that the record establishes that these costs can be

4  disaggregated at this point, so Defendant USIC must tender the defense with a reservation as to

5  costs it views as being not covered by its policy. At the close of the underlying state court

6  proceeding Defendant USIC may file a motion in this Court seeking contribution for costs which

7  it views are not covered by its policy.

8

9        **DATED:** October 24, 2022

10

11

12                              **RICHARD F. BOULWARE, II**

13                              **UNITED STATES DISTRICT JUDGE**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28