1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ARCH INSURANCE COMPANY,

Plaintiff,

v.

KNIGHT SPECIALTY INSURANCE,

Defendant.

Case No. 2:21-cv-00723-RFB-BNW

**ORDER**

Before the Court is one Motion for Reconsideration of Order on Motions for Summary Judgment and Request for Stay of Proceedings (ECF No. 26) by Defendant Knight Specialty Insurance Company/United Specialty Insurance Company ("USIC"). For the foregoing reasons, the motion is denied.

I.      **BACKGROUND**

The Court incorporates the procedural and factual background sections herein from its prior order on summary judgment, ECF No. 25, and adds the following: On October 24, 2022, the Court entered an order on the cross motions for summary judgment. ECF No. 25. In its Order, the Court denied USIC's Motion for Summary Judgment. The Court granted Plaintiff Arch Insurance Company's Motion for Summary Judgment in part and denied it in part. The Court found that Defendant USIC has a duty to defend Las Vegas Paving and ordered USIC to tender a defense up to its policy limit in the underlying action. The Court instructed that if the costs exceed the policy limit of Defendant USIC's policy, then the excess policy of Plaintiff Arch Insurance would be triggered. The Court further declined to resolve the issue of the duty to indemnify, finding it

premature because the underlying action involving Mr. Benavidez had not been resolved. The Court gave leave to the parties to file a motion to address the issue of indemnification and any contested defense costs upon resolution of the underlying action.

On November 18, 2022, USIC filed the instant Motion for Reconsideration. USIC seeks relief from the Order, as well as a stay from the order to reimburse Arch all of its defense costs while the Court reconsiders its Order. This Order follows.

## II.      LEGAL STANDARD

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citation and quotation marks omitted); see also Local Rule 59-1(a). The Court has discretion to grant or deny a motion for reconsideration. Navajo Nation v. Norris, 331 F.3d 1041, 1046 (9th Cir. 2003). "A motion for reconsideration should not be granted," however, "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citation and quotation marks omitted).

Under Federal Rule of Civil Procedure 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5)-(6). Local Rule 59-1(a) provides in relevant part:

"A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity. The court possesses the inherent power to reconsider an interlocutory order for cause, so long as the court retains jurisdiction. Reconsideration also may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."

Local Rule 59-1(a). These motions are disfavored. Local Rule 59-1(b).

I.      DISCUSSION

For the foregoing reasons, the Court denies Defendant USIC's motion for reconsideration.

a.  Consideration of the Duty to Defend

USIC argues that Arch must also defend LV Paving because the allegations in the underlying action create the potential for coverage under the Arch policy. USIC states that the Court erroneously applied Nevada law regarding the duty to defend. Specifically, USIC contends that the Court misunderstood the meaning of a "full" defense and interpreted it to mean that one carrier must shoulder the entire responsibility for the defense. USIC argues that the Court was required to separately analyze each insurance carrier's duty to defend. USIC concludes that the Court only analyzed whether USIC had a duty to defend and did not separately analyze whether Arch also had a duty to defend.

As a threshold matter, the Court is puzzled by USIC's repeated reference to the term "full defense" as neither this term nor the underlying concept was ever once mentioned in the Court's order on the summary judgment motions. Nonetheless, the Court finds no error in its analysis on the duty to defend. According to one of the definitive treatises on insurance, "in the context of liability insurance, a primary insurer generally has the primary duty to defend the insured unless otherwise excused or excluded by specific policy language. Where this is more than one insurer which covers the same risk, courts will generally look to the terms of the respective policies to

3

determine who will act as the primary insurer for purposes of providing a defense." 14 Couch on Ins. § 200:36 (2023); see also Travelers Ins. Co. v. Lopez, 93 Nev. 463, 465 (1977) (comparing the language of two policies to determine which insurer was primary); Allstate Ins. Co. v. Pilosof, 110 Nev. 311, 315 (1994) ("[w]e are still, however, left with the task of determining which of the two policies constitutes primary coverage."). This is exactly what the Court did in its Order on the motions for summary judgment. The Court did not solely analyze whether USIC had a duty to defend. In making its determination, the Court applied Nevada law and carefully assessed the plain language of both the Arch-LV Paving Policy as well as the USIC-Superior Traffic Policy to determine which insurer was primary and which insurer was excess.

Had the Court found the language of both policies indicated that both insurers were primary with respect to the underlying action, or had the Court found that the policies contained conflicting "other insurance" clauses, then both Arch and USIC would have had independent duties to defend and the costs of defense would be shared. Traveler Ins. Co., 93 Nev. at 468. But that was not the Court's conclusion. Instead, the Court concluded that Arch was excess and "a true excess policy is one which is specifically intended to only come into play when the limits of the underlying coverage are exhausted." Guar. Nat'l Ins. Co. v. Am. Motorists Ins. Co., 981 F.2d 1108, 1109 (9th Cir. 1992); see also 14 Couch on Ins. § 200:36 (2023).

**b. Determination of Primary and Excess Insurers**

USIC also contends that the Court erroneously found that the Arch policy was entirely excess. The Court will consider each of USIC's arguments in turn.

First, USIC contends that it was improper for the Court to consider extrinsic documents outside of the policy such as the indemnity clause within the Subcontract Agreement between LV Paving and Superior Traffic because the language of the additional-insured endorsement was clear. The Court finds that it was not error to consider the Subcontract Agreement between Superior Traffic and LV Paving. As with any contract, courts regularly must interpret the terms of insurance policies by reference to extrinsic documents that are incorporated by reference to the policy. N. Las Vegas Infrastructure Inv. & Constr., LLC v. City of N. Las Vegas, 139 Nev. Adv. Op. 5, 525

P.3d 836, 840 (2023) (contract interpretation includes "reviewing any documents incorporated by reference or appended to the contract at issue."); Lincoln Welding Works, Inc. v. Ramirez, 98 Nev. 342, 345 (1982) (where a separate writing is "made a part of the contract by annexation or reference," the writing will be construed as part of the contract).

Here, the USIC-Superior Traffic Policy states that the additional insured status would attach to contractors "when required by written contract." In addition, the "Primary and Non-Contributory Insurance" endorsement includes a qualification clause that provides: "any coverage provided to an Additional Insured shall be excess over any other valid and collectible insurance available to such Additional Insured . . . unless: 1) a written contract or written agreement specifically requires that this insurance apply on a primary basis or non-contributory basis. . ." Thus, to give effect to the mutual intention of the parties, it was necessary for the Court to consider the Subcontract Agreement between Superior Traffic and LV Paving. The Subcontract Agreement was the key to determining whether LV Paving was an additional insured in the first place and whether USIC was to apply on a primary basis.

USIC next asserts that the plain language of the additional insured endorsement only provides coverage to LV Paving for liability "caused, in whole or in part" by Superior Traffic. USIC argues that the Court impermissibly broadened the scope of USIC's obligation under the policy by substituting the terms "caused, in whole or in part" with "arising out of." The Court does not find error or manifest injustice resulting from this choice of language. Regardless of the terms the Court used to describe the activation of the duty, the Court's actual analysis was entirely consistent with USIC's position that the duty to defend was triggered only when the underlying complaint alleged actions "caused by" Superior Traffic. Indeed, the Court based its determination that USIC was the primary insurer on the fact that Benevidez's complaint alleged direct causation between Superior Traffic's actions and his injuries. See ECF No. 25 at 11 ("had there been sufficient traffic control, Benevidez would not have hit the curb.").

Finally, USIC argues that there is no legal authority supporting the finding that an additional insured carrier must shoulder the entire cost of defending an additional insured under a

"caused, in whole or in part by" additional insured endorsement when that additional insured is also potentially liable because of its own negligence. Rather, according to USIC, the named insured carrier remains obligated to contribute to the defense to its own named insured. USIC argues that the following facts—the work was designed and performed by LV Paving alone, with no participation from Superior Traffic, and LV paving was sued for its alleged negligent hiring, training, supervision and retention—are enough to trigger Arch's independent obligation to defend its insured.

The Court rejects USIC's final argument. First, several other courts to analyze facts that are substantially similar to the present case have ruled that a insurer in USIC's position must bear the cost of defending an additional insured under a "caused, in whole or in part" endorsement even when that additional insured is also potentially liable due to its own negligence. For example, in First Mercury Ins. Co. v. Cincinnati Ins. Co., 882 F.3d 1289, 1302-05 (10th Cir. 2018), the Tenth Circuit ruled that a subcontractor's policy was primary to a general contractor's policy because the express terms of the subcontract agreement required the subcontractor's procured policy to be primary and non-contributory to the general contractor's when the injuries are "caused in whole or in part" by the subcontractor. Thus, the court reasoned that although the underlying action was brought against the general contractor, the injuries were caused at least in part by the subcontractor's negligence, therefore making the subcontractor's insurance primary. See also Am. Ins. Co. v. Liberty Surplus Ins. Corp., No. 5:11-CV-03159-LHK, 2012 WL 3361527 (N.D. Cal. Aug. 13, 2012) (finding that Liberty's duty to defend was primary in relation to American's and therefore extended to the whole action where the insureds entered into a contract that required the other contractor to procure primary, non-contributory coverage); Westfield Ins. Co. v. Weaver Cooke Constr., LLC, 383 F. Supp. 3d 566 (E.D.N.C. 2019); Steadfast Ins. Co. v. Berkley Nat. Ins. Co., 217 F. Supp. 3d 904, 914 (S.D.W. Va. 2016); Murnane Bldg. Contractors, Inc. v. Zurich American Ins. Co., 107 A.D. 3d 674 (NY App. 2013).

These cases make clear that a subcontractor's partial fault in the underlying action does not, by itself, trigger the subcontractor's insurer's duty to defend. The USIC-Superior Traffic

Policy, read in conjunction with the Arch-LV Paving policy and the Subcontract Agreement, established that USIC would be primary where the underlying complaint alleges that the injuries were "caused in whole or in part" by Superior Traffic. Benevidez's complaint did just that. Therefore, that LV Paving was allegedly partially at fault does not change the fact that USIC is still the primary insurer—with LV Paving's duty to defend activating once the primary insurance has exhausted or reached its policy limits. This conclusion is consistent with the clear terms of the insurance policies and Subcontract Agreement.

For the foregoing reasons, the Court does not find that its order committed an error of law or resulted in a manifest injustice. The Court further does not find any reasons for relieving USIC of the final judgment under Rule 60(b).

**IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration, including Defendant's request for a stay from the Court's order to reimburse Arch its defense costs (ECF No. 26) is **DENIED.**


**DATED:** <u>September 30, 2023</u>

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

7